ROWLAND, Respondent, v. ST. LOUIS & SAN
   FRANCISCO RAILROAD COMPANY, Ap-
   pellant.

### St. Louis Court of Appeals, April 30, 1907.

1. **PLEADING: Accord and Satisfaction: Fraud.** In an action
against a railroad company for damages on account of failure to
maintain cattle-guards and fences where the defense was accord
and satisfaction, a reply filed by the plaintiff alleging that the
settlement was for other and different damages from those sued
for, did not raise the issue of fraud in procuring the settlement.

2. **EVIDENCE: Accord and Satisfaction.** In an action against a
railroad company for damages to the plaintiff's land and crops
caused by the failure of the defendant to maintain fences and
crossing gates, where the defendant set up an accord and sat-
isfaction under an agreement of settlement for "all claims to
date" and "also all claims arising from damage to land or
crops or from failure to erect and maintain farm crossing gates"
such an agreement was a release of the demand and constituted
a defense unless avoided for fraud.

Appeal from New Madrid Circuit Court.—*Hon. Henry
C. Riley,* Judge.

REVERSED AND REMANDED.

   *L. F. Parker* and *Moses Whybark* for appellants.

(1) The voucher introduced in evidence by the
plaintiff himself was a complete settlement of all claims
from damage to land and crops up to August 27, 1904,
its date. And the court erred in not so construing the
same. It was an accord and satisfaction of all claims
against the defendant on account of the matters therein
set forth. A disputed claim may be finally settled by an
agreed payment of a part in liquidation of the whole,
and that was this case. Holland v. Rongey, 168 Mo. 16;
Marshall v. Larkin, 82 Mo. App. 635; Tansey v. Railroad,
90 Mo. App. 101. (2) Plaintiff when he received the
money on the voucher well knew its purport, or had full
opportunity to know that fact, which is the same, and

Rowland v. Railroad.

there was no fraud, misrepresentation, trick or conceal-
ment about the matter; everything appeared on the face
of the voucher. Crim v. Crim, 162 Mo. 544; Mateer v.
Railroad, 105 Mo. 320; O'Brien v. Kinney, 74 Mo. 125;
Catterlin v. Lusk, 98 Mo. App. 187; Johnson v. Ins. Co.,
93 Mo. App. 580.

*J. V. Conran* for respondent.

GOODE, J.—This case is for damage done to plain-
tiff's crops by hogs which entered his fields from de-
fendant's right of way in consequence of a failure to
erect and maintain good and lawful fences and suffi-
cient cattle-guards. The railroad runs through plain-
tiff's farm and the evidence supported the statements of
the petition in regard to hogs entering from the rail-
road and destroying the crops. In defense of the action,
besides a general denial, the defendants alleged that
before the institution of the suit they had agreed on a
settlement with plaintiff covering the demand in con-
troversy, and all other claims of plaintiff; that the bal-
ance found to be due plaintiff was sixty dollars, which
defendants paid to him, whereby he was precluded from
prosecuting the present action. A replication was filed
denying the averments of the answer and pleading fur-
ther as follows:

"Comes now plaintiff, and states by way of reply
to the second count containing the new matter pleaded,
that said alleged voucher was in settlement of three hogs
killed and loss occasioned from five acres of land, all
of which was entirely outside of and not in any way
connected with the subject-matter of this action; and
that the same was perfectly understood between the
plaintiff and defendant herein."

It should be stated that the present action was
brought to the March term, 1905, of the circuit court
and was for damage done during the crop season of

1904. The exact date of the injury is not given, but it was after April 12. Some of plaintiff's demands against the defendants for loss of stock killed by locomotives and injuries to crops by the entrance of hogs on his farm from the right of way, had been placed in the hands of a firm of attorneys for collection. A settlement was entered into in August or September between said attorneys and an agent of the defendants, of which the St. Louis & San Francisco Railroad Company seems to have been the active and responsible party and the one in whose name the settlement was made. It is contended by plaintiff the matter involved in the present action was not included in the adjustment. The terms of the settlement are shown by the following writing, which defendants introduced in evidence:

"Voucher 837, dated September 19, 1904. .

"*St. Louis and San Francisco Railroad Company.*

"T. N. Rowland,                        August 27th.

"Care of T. J. Brown,

"New Madrid, Missouri.

"For accord and satisfaction of all claims against said company to date, including three hogs killed near Conran, Missouri, on or about June 11, June 13, and July 12, 1904. Also all claims arising from damage to land or crops or from failure to erect and maintain farm crossing gates. ' Sixty Dollars.

Signed

"H. T. DICK, District Attorney,

"H. J. CONRAN, Auditor of Disbursements,

"W. H. BASSETT, Vice-Pres. & Gen. Mgr.

"Approved: E. H. SENEFF, General Attorney.

"Received September 14, 1904, of the St. Louis & San Francisco Railroad Company, sixty dollars in full payment of above account. T. N. ROWLAND,

Witness: W. N. SWAIN,

Endorsed: T. N. ROWLAND,

HUBBARD & BROWN."

In connection with the foregoing document, defendants introduced two exhibits (A and B). Exhibit "A" is nearly a duplicate of the document just copied, and is as follows:

"Record No. 837.          Recorded in September, 1904.
      *St. Louis & San Francisco Railroad Company.*
"To T. N. Rowland, Dr., Account T. J. Brown,
              New Madrid, Missouri.

1904.          For accord and satisfaction of all
               claims against said company to
               date including, three hogs killed
Aug.           near Conran, Missouri, on or about
27th.          June 11, June 13, and July 12,
               1904; also all claims arising from
               damage to land and crops or from
               failure to erect and maintain farm
               crossing gates ...........$60.00

"Received Sept. 14, 1904, of the St. Louis and San Francisco Railroad Company, Sixty No-100 Dollars in full payment of above account.
      "Witness:  T. N. ROWLAND.
      "Endorsed: (T. N. Rowland, Hubbard & Brown.)
      "(Pay National Bank of Commerce in St. Louis, or order New Madrid Banking Co., New Madrid, Mo.
              "W. H. GARANFLO, Cashier.)"

This is Exhibit "B":

              "New Madrid, Missouri, Aug. 1, '04.
      "*St. Louis and San Francisco R. R. Co.*
"Application for damages for loss of crop and money expended.
      "T. N. Rowland, Conran, Mo.
"To money paid to hands for clearing ground
      for cultivation ...... .. ......... .... ..$12.40
"To labor for self and team ................. 4.00
"To rent on 5 acres of land ................. 17.50
                                        $33.90

"The above claim was occasioned by the company failing to put in crossing and gates for farm after fencing right of way, claimant being unable to get to the land any other way on account of swamp which was not in such a condition as a team could cross at any time. The above claimant wants net to him and our fee in addition.

"Yours truly,

"HUBBARD & BROWN,

"By BROWN."

"Rec'd Law Dept. Aug. 3, 1904.

St. L. M. & S. E. R. R. Co.

St. Louis & Gulf Ry. Co."

Thomas Brown, one of the attorneys who had plaintiff's demands against the defendants in charge when the adjustment occurred and represented plaintiff in negotiating it, testified that nothing was included in it except the claim for three hogs which had been killed, and a claim for damages sustained by plaintiff to five acres of corn that he had failed to cultivate on account of a farm crossing and gate not being erected between the land where he lived and the land he did not cultivate. The latter item seems to be the one shown in Exhibit "B.". Brown swore the adjustment did not embrace the loss of plaintiff's peas, pumpkins and corn crop in the year 1904, which loss is the subject-matter of this action. He testified further that when the voucher or receipt for the money paid on the settlement was signed, he talked with the agent of the railroad companies who had the matter in charge, and it was agreed that the payment was for the hogs and the loss entailed by plaintiff's failure to cultivate the five acres of ground; that it would not interfere with plaintiff's collection of damages caused by hogs destroying his crops. Brown's testimony is inconclusive at this point. He swore the understanding between him and Rowland, his client, was, as

stated above, and he supposed he had the same under-standing with Livesay, the companies' agent. He testi-fied further that Rowland had spoken to him about the present claim before the date of the settlement; that he read the voucher or contract over to Rowland and dis-cussed it with him and Rowland signed it, took the check and went to the bank and collected the sixty dollars on it. Plaintiff got his money on September 11, but it seems the agreement was reached some time earlier, probably on August 27. No jury was called and the court, after overruling a demurrer to the evidence, found the issues for plaintiff without any declarations of law having been requested. The most that can be said in plaintiff's favor concerning the evidence is that it conduced to prove the contract of accord and satisfaction was not intended to cover the present demand. Plaintiff's counsel contends the document containing the contract of settlement was subject to impeachment for fraud under section 654 of the statutes (R. S. 1899). No doubt this is true if the proper issue had been raised in the replication. The statute says that if a release, composition or other dis-charge of the cause of action sued on, shall be set up or pleaded in bar in the answer, "it shall be permissible in the reply to allege any facts showing, or tending to show, that said release, composition, settlement, or other discharge was fraudulently or wrongfully procured from plaintiff; and the issue or issues thus raised shall be submitted, with all the other issues in the case, to the jury, and a general verdict or finding upon all the issues, including the issue of fraud so raised, shall be sufficient." We have set out the reply and the question is whether or not it alleges facts tending to show the settlement was fraudulently or wrongfully procured. It will be observed that the voucher and its accompanying docu-ments, introduced in proof of the accord and satisfac-tion, purport to cover all claims against the St. Louis & San Francisco Railroad Company to the date of the

accord.   In the reply the plaintiff did not attack the
accord and satisfaction for fraud, but instead merely
said the voucher was signed in settlement for three hogs
killed and the loss from five acres of land; which were
outside of and not connected with the subject-matter of
this action, as was perfectly understood between plain-
tiff and defendant.   Those allegations do not show, or
tend to show, the discharge was fraudulently or wrong-
fully procured from plaintiff.   There being no allegation
that plaintiff was imposed on, misled or deceived in any
way, we think an issue of fraud in procuring the settle-
ment was not raised by the replication, and that the
statute invoked in support of the right to attack the
accord for fraud, does not apply.   The more difficult
question is whether or not the documents might be
orally proved to have nothing to do with the matter
in controversy.   The course the evidence took shows
the purpose was to prove the present demand was not
embraced in the settlement, rather than to support an
averment or issue of fraud.   The fact that the instru-
ments purported to cover all demands held by plain-
tiff to their date, would not, of necessity, exclude evi-
dence to show the compromise was intended to cover only
certain specific demands.   [Grumley v. Webb, 44 Mo.
444; Bigbee v. Coombs, 64 Mo. 529.]   We cannot treat
the first two instruments as duplicate receipts, for, in
express words, the parties declared the agreement con-
tained in the writings was an accord and satisfaction,
which is not only a contract, but one of unusual solemn-
ity and under the law of evidence, not open to oral con-
tradiction.   Nevertheless if, without disputing the terms
of the writings, it could be shown the settlement was
intended to include only the two matters specifically
mentioned, oral evidence to that effect would be admis-
sible.   The specified items were three hogs killed near
Conran, Missouri, on or about June 11 and 13 and July
12, 1904, and claims arising from damage to land and

crops or from failure to erect and maintain farm cross-ing gates. Now if we scrutinize the language of the instruments, we find a recital that the accord and satis-faction is of all claims against the railroad company to date, including the three hogs, damage to land and crops, and from failure to erect and maintain farm crossing gates. The use of the language "all claims, in-cluding" those specified, evidently means there were claims not mentioned, but intended to be covered by the settlement. Moreover, the voucher does not say all claims arising from damage to land or crops occasioned by the company's failure to put in crossing gates. If it did that item would refer more directly to the item shown in exhibit "B". But the language of the voucher is, "also all claims arising from damage to land and crops, *or* from failure to erect and maintain farm crossing gates." All claims arising from damage to land or crops would include the present claim for damage to crops by the incursions of stock from the right of way. On their faces the instruments of settlement or release include the present demand and constitute a de-fense to plaintiff's action, until avoided for fraud under the section of the statutes above cited. But in order to avoid the defense plaintiff must raise the proper issue in reply to the answer.

The judgment is reversed and the cause remanded. All concur.